## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (NORTHERN DIVISION)

| | |
|---|---|
| **CODY SIMPSON**<br>2900 Timber Ridge Drive<br>Mt. Airy, Maryland 21771<br>*Resident of Carroll County* | <u>Jury Trial Requested</u> |
| **NICHOLAS REDDING**<br>636 South Lakewood Avenue<br>Baltimore, Maryland 21224<br>*Resident of Baltimore City* | |
| and | Collective/Class Action Claim |
| **BRIAN MILES**<br>3414 Dillon Street<br>Baltimore, Maryland 21224<br>*Resident of Baltimore City* | |
| Plaintiffs, | |
| ***Individually and on Behalf of All***<br>***Similarly Situated Employees*** | |
| v. | Civil Action No.: |
| **PURE TECHNOLOGIES U.S., INC.**<br>300, 705 – 11th Avenue, S.W.<br>Calgary, Alberta<br>Canada, T2R 0E3 | |
| Serve: CSC-Lawyers Incorporating Service<br>Company<br>7 St. Paul Street<br>Suite 820<br>Baltimore, Maryland 21202 | |
| Defendant. | |

## COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED

CODY SIMPSON, NICHOLAS REDDING and BRIAN MILES, Plaintiffs, by and

through their undersigned counsel and The Law Offices of Peter T. Nicholl, on behalf of

themselves and all others similarly situated, hereby submit their Complaint against PURE TECHNOLOGIES U.S., INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant Pure Technologies U.S., Inc. ("Defendant") is an engineering company that specializes in infrastructure inspection and monitoring. Defendant's business centers on the inspection of oil, natural gas and water pipelines. This is accomplished by means of various proprietary technologies. Defendant employs field personnel for the purpose of conducting physical inspections of the pipelines. Said personnel include field technicians, field operators, field engineers and project engineers (collectively referred to as "field personnel").

Plaintiffs and other similarly situated employees held these positions. Plaintiff Miles and Plaintiff Simpson were field technicians. Plaintiff Redding was a project engineer. The responsibilities attributable to these positions were the same. The duties charged to Defendant's field personnel were substantially similar. Plaintiffs and others similarly situated were all responsible for the same primary tasks. Their tasks centered on going into the field to perform inspections and reporting their findings. They were specifically charged with inspecting pipelines and similar infrastructures in order to assess whether there was any damage. This was

accomplished through the use of various devices. The use of electronic probes was the primary method utilized to perform the inspections. Basic equipment common to Defendant's industry was all that was required.

Plaintiffs' and other similarly situated employees' tasks centered on manual labor. Regardless of their title, Plaintiffs' and other field personnel's duties comprised of routine technical work. This work was simplistic in nature. To perform their inspections, following Defendant's guidelines was all that was needed. There were procedures aligned with all of Plaintiffs' task. There were protocols related to all of their on-site tests. There were guidelines associated with reporting the results of said tests. Plaintiffs and other field personnel were demanded to follow these guidelines precisely. They had to follow all of Defendant's instructions. These instructions were easy to follow. Their work was not intellectual in character. A basic understanding of field testing procedures was all that was needed.

Plaintiffs and other field personnel routinely worked over forty (40) hours each week. This resulted from the substantial field work their positions required. Field work often took substantial lengths of time to complete. The nature of certain projects would often take days to finish. Routine complications would also regularly extend the length of their assignments.

Understaffing was another issue. Defendant failed to maintain a sufficient number of field personnel. There were simply too many jobs and not enough staff. This resulted in Plaintiffs and others similarly situated working excessive hours. They worked overtime for the duration of their employment. Plaintiffs and other field personnel sometimes worked as many as ninety (90) hours in a week. There were times when they worked even more. Defendant required Plaintiffs and others similarly situated to work whatever hours necessary to complete their work in the field.

Defendant failed to properly compensate Plaintiffs and others similarly situated for this work. Plaintiffs and others similarly situated were misclassified as salaried employees. They received the same bi-monthly payments regardless of the number of hours they worked each week. However, the work performed by Plaintiffs and other field personnel did not exempt them from the overtime requirements. They should have received overtime ("time and a half") pay for every hour worked over forty (40) each week.

By classifying its field personnel as salaried employees, Defendant was able to avoid both federal and state wage laws. Through this practice, Defendant evaded the payment of wages owed to Plaintiffs and others similarly situated. This conflicts with the standards set forth by the FLSA, MWHL and the MWPCL.

Defendant knew its conduct was improper. Defendant recently began to pay all of its field personnel correctly. This includes all those that hold the titles of field technician, field operator, field engineer and project engineer. These employees are now paid by the hour. They receive overtime pay as well.

The duties assigned to Defendant's current field personnel have not changed. They continue to perform the same role as Plaintiffs. They are still responsible for the exact same tasks. Nevertheless, Plaintiffs have yet to be properly compensated for all the tasks they performed. They have not received back payments for the overtime wages they earned. Others similarly situated have also failed to receive these payments. This mandated the filing of this Complaint.

## THE PARTIES

1.      Plaintiff Cody Simpson (hereinafter, "Simpson") is an adult resident of Carroll County, Maryland.

2.      Plaintiff Nicholas Redding (hereinafter, "Redding") is an adult resident of Baltimore City, Maryland.

3.      Plaintiff Brian Miles (hereinafter, "Miles") is an adult resident of Baltimore City, Maryland.

4.      Defendant Pure Technologies U.S., Inc. (hereinafter, "Defendant")[1] is an incorporated for profit business.

5.      Defendant's principal office is in Calgary, Alberta, Canada.

6.      Defendant maintains offices throughout the United States, including Atlanta, Georgia, Branchburg, New Jersey, Columbia, Maryland, Dallas, Texas, Miami, Florida, San Diego, California, Buffalo Grove, Illinois, Houston, Texas, St. Louis, Missouri and Austin, Texas.

7.      Defendant's business centers on inspecting and monitoring pipelines and similar infrastructures.

8.      Defendant staffs field personnel to meet its business needs.  These employees are primarily responsible for performing inspections in the field.  These employees were given the title of field operator, field technician, field engineer, or project engineer.

9.      From July 28, 2014 to June 2, 2017, Plaintiff Simpson held the title of field technician.  He was based out of Defendant's Columbia, Maryland office.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency.  To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

10.     From approximately May 2013 to January 2016, Plaintiff Redding worked for Defendant. He was given the position of project engineer.  Redding was based out of Defendant's Columbia, Maryland location.

11.     From approximately March 2015 to August 2015 and approximately April 2016 to October 2016, Plaintiff Miles was employed with Defendant. At all times relevant to this Complaint, Miles held the title of field technician.[2] Miles was based out of Defendant's Columbia office.

12.     Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL.

13.     Defendant's business meets the definition of a retail or service establishment.

14.     Due to the amount of revenues generated, Defendant is subject to the FLSA, MWHL and the MWPCL.

15.     Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

16.     At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce. This is based on the nature of the duties Plaintiffs performed as part of their employment with Defendant.

17.     Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

---

[2] From 2008 to March 2015, Plaintiff Miles was also employed with Defendant as a field technician. Following this, from approximately March 2015 until April 2016, Plaintiff Miles served as an operations supervisor. Miles was subsequently demoted, leading his position of field technician to be re-instated in April 2016.

18.     At all times relevant, Plaintiffs and others similarly situated worked as non-exempt employees for Defendant.

19.     The tasks Plaintiffs and other field personnel performed did not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL, or the MWPCL.

20.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and others similarly situated.

21.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

22.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and other field personnel.

23.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

24.     Defendant had and exercised the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

25.     Plaintiffs and other field personnel recognized Defendant's authority and obeyed Defendant's instructions.

26.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

27.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

28.     Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

29.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

30.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

31.     This Honorable Court has personal jurisdiction over Defendant, as Defendant is a corporation incorporated under the laws of Maryland. Defendant conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

32.     Defendant is an engineering company that specializes in infrastructure monitoring.

33.     Defendant's business centers on the inspection of underground pipelines carrying oil, water and natural gas.  These inspections are termed "condition assessments."

34.     Defendant provides its inspection services to a variety of corporate and governmental clients.

35.     Plaintiffs and others similarly situated were employed by Defendant to perform services on behalf of its clients.

36.     Plaintiffs and other similarly situated employees were given similar titles. This includes field technician, field operator, field engineer and project engineer (collectively referred

to as "field personnel"). Plaintiffs' and other field personnel's roles were similar. Their primary duties were the same. Their tasks centered on the inspection of pipelines and other physical infrastructures.

37.     The goal of each inspection was based on the needs of Defendant's clients. Plaintiffs and others similarly situated were typically tasked with identifying problems with aging infrastructures. They had to estimate pressure points where critical failures would ensue. Their tasks also consisted of detecting issues with pipelines at risk of failure. Pressure flow monitoring was included with this task. They were responsible for pinpointing air pockets, blockages and potential leaks.

38.     Plaintiffs and similarly situated employees had to resolve these technical issues. This was accomplished through the performance of "field tests." All field personnel were responsible for these tests.

39.     Plaintiffs and others similarly situated were required to perform these tests at various locations. They were regularly required to travel across the United States. There were times when they had to work outside the United States as well. It was demanded that they perform their inspections at whatever location was assigned.

40.     The inspections were completed through the use of technology developed by Defendant. Technical devices were utilized to test the structural integrity of various constructs.

41.     Plaintiffs and others similarly situated reported to Defendant's regional operations managers and other management officials. Management officials were responsible for distributing Plaintiffs' and other field personnel's assignments. All assignments were distributed in accordance with Defendant's procedures.

42.     Defendant's customers would initially send a proposal to inspect a certain pipeline, or to install a device within. The proposals were brought to the attention of one of Defendant's project managers.  The project manager would then put the operations and engineering plans in place.

43.     Plaintiffs and other field personnel would receive instructions regarding the details of each plan. This included the location of a project, the required materials and the personnel needed to execute the plan.

44.     Plaintiffs and others similarly situated were required to follow the specifics of each plan.  They lacked independent judgment.  They had no decision-making authority.  They were prohibiting from acting on their own.

45.     Plaintiffs and other field personnel could occasionally be responsible for basic logistical planning.  This consisted of routine procedures.  Running preliminary tests of equipment was a common example.

46.     During the initial stages, Plaintiffs and other field personnel could also be required to prepare preliminary budgets and site and safety plans. These plans were basic in nature. They were always subject to approval. Plaintiffs and other field personnel lacked discretion in the implementation of these plans. The plans had to conform to Defendant's strict guidelines. Plaintiffs and other field personnel were demanded to follow these guidelines precisely.  Managing officials had and exercised the authority to correct and modify each plan Plaintiffs submitted. Managing officials always had the final say.

47.     Once a supervisor approved the initial plan, Plaintiffs and others similarly situated would travel to the designated work-site.  They would then perform the required tests.  This entailed following routine protocols.  This consisted of setting up equipment and verifying that all

equipment operated correctly.  Attaching fittings to equipment and calibrating systems were other routine procedures.

48.    Following these procedures, Plaintiffs and other field personnel would then perform the actual test.  This was often exceptionally time consuming.  It was common for Plaintiffs and others similarly situated to experience complications.  The complications resulted for a variety of reasons.  They were typically due to routine technical malfunctions.  There were also persistent issues with the pipelines themselves.

49.    Defendant's jobs were also routinely understaffed. It was Defendant's practice to not staff its worksites with a sufficient number of employees. The complexity of many of the projects required additional personnel. Completing field tests could be very tedious.  The tests involved inserting specialized equipment into the pipelines. Field personnel also had to ensure the equipment was sending back the proper reading.  They also had to monitor those readings for aberrations.  They had to record those readings as well.

50.    There were other routine procedures that Plaintiffs and other field personnel had to follow.  Once a test was completed, they had to secure the equipment and replace any fittings removed on a client's property.  They then had to return all the equipment to the office.  Defendant required Plaintiffs and other field personnel to follow each of these steps.

51.    There were other steps Plaintiffs and other field personnel had to complete.  These steps were also aligned with Defendant's procedures. Once the data from the field tests was compiled, Plaintiffs and others similarly situated had to produce a report based on their findings. These findings were automatically generated through the devices used to complete the inspections.

52.    The reports were all in template form. There were data fields designated within each report.  Each field was completed based on the information gathered from the inspections.

To fill out the reports, it was only required that Plaintiffs and other field personnel follow Defendant's basic procedures. This was simply a matter of routine.  It simply entailed positioning their findings within the designated areas of the reports.

53.     Plaintiffs and other field personnel did not have to analyze their findings. Defendant employed data analysts and other specialists to perform the analysis.  Such analysis was outside the scope of Plaintiffs' and other field personnel's duties.

54.     Plaintiffs' and other similarly situated employees' duties did not include having to interpret information.

55.     Plaintiffs and others similarly situated did not make recommendations.

56.     Plaintiffs and other field personnel did not exercise control over Defendant's policies.

57.     Plaintiffs and others similarly situated did not supervise other employees.

58.     Plaintiffs and other field personnel did not have the authority to hire or fire employees.

59.     Plaintiffs and others similarly situated had no discretion in performing their assigned tasks.

60.     Plaintiffs' and other field personnel's tasks did not require intellectual instructions.

61.     Plaintiffs' and other similarly situated employees' tasks did not require specialized knowledge; advanced training was also not required.

62.     Plaintiffs' and other similarly situated employees' duties centered on manual labor.

63.     To perform their labor, Plaintiffs and other similarly situated employees only needed an understanding of basic technical procedures. Learning these procedures primarily resulted from experience on the job.

64.     Plaintiffs and other field personnel satisfied the requirements of their job. They adequately performed their duties to benefit Defendant, as well as the Defendant's clients.  They performed their duties to the extent required by Defendant.

65.     Prior to November 2016, Plaintiffs and other field personnel were all paid on a salary basis.  They received the same bi-monthly payments regardless of the number of hours they worked.  They failed to receive overtime pay for any hours worked in excess of forty (40) in a week.

66.     In November 2016, all of Defendant's field personnel were converted to hourly employees.  This includes Defendant's field technicians, field operators, field engineers and project engineers.  Following the reclassification, all field personnel began to receive overtime payments.  They started to receive "time and a half" their regular rate of pay for each hour worked over forty (40) in a week.

67.     Plaintiffs' and other similarly situated employees' duties did not change upon being reclassified.  Their tasks remained exactly the same.  They were not given any additional duties. They did not lose any of their original responsibilities.  Their work still centered on general labor. This work was not modified in any way.

68.     From approximately July 28, 2014 until November 2016, Plaintiff Simpson was classified as a salaried employee.  His starting salary was fifty-six thousand dollars ($56,000.00) per year.  In November 2016, Defendant reclassified Plaintiff Simpson's position.  Simpson began to be paid at an hourly rate of twenty-eight dollars and fifty-six cents ($28.56) for his work as a field technician.  He received this rate until June 2, 2017, which was the last date of his employment.

69.     For the entirety of the relevant period, Plaintiff Redding was classified as a salaried employee.  In May 2013, his starting annual salary was sixty thousand dollars ($60,000.00) for his work as a project engineer. Plaintiff Redding's employment ended in January 2016.  His ending salary was approximately sixty-three thousand dollars ($63,000.00).  Redding's employment ended prior to when Defendant converted his position to hourly.

70.     For the duration of the relevant periods, Plaintiff Miles was paid an annual salary of approximately sixty-three thousand dollars ($63,000.00) for his work as a field technician. These periods stem from approximately March 2015 to August 2015 and approximately April 2016 to October 2016.  Miles was no longer employed with Defendant at the time his position was reclassified.

71.     For the entirety of their employment, Plaintiffs and others similarly situated worked overtime consistently.  The demands of their employment required Plaintiffs and other field personnel to work excessive hours.  They worked these hours both in the office and in the field.

72.     When working in the office, twelve (12) hour days were not uncommon.  There were occasions when Plaintiffs and other field personnel worked seventy (70) hours or more each week.

73.     When working in the field, Plaintiffs and others similarly situated could work even more.  They sometimes worked as many as ninety (90) hours each week.  The demands of their employment required that they work non-stop. The nature of their duties forced Plaintiffs and others similarly situated to work overtime constantly.

74.     Their overtime commonly resulted from the complexities of field testing.  All of the facets involved with testing led it to be a tedious process. Completing all the steps in the process

would often require substantial lengths of time. A single project could take several days to complete.

76. Plaintiffs and other field personnel were also subject to regular delays. The delays could result for a variety of reasons. They were typically caused by routine malfunctions. This includes problems with operating the equipment and waiting for software to boot.

76. Understaffing was also a regular problem. There was often an insufficient number of personnel to complete all of the work in the field. Accordingly, many of the field projects were undermanned. There were not enough employees assigned to cover the multiple projects. This required Plaintiffs and other field personnel to work additional hours to compensate for their lack of support.

77. Plaintiffs and others similarly situated were not properly compensated for their additional work. They failed to receive overtime wages for the additional work they performed.

78. Defendant suffered and/or permitted Plaintiffs and others similarly situated to work these overtime hours.

79. There is no bona fide dispute that Plaintiffs and other field personnel are owed overtime wages for all hours worked over forty (40) in a workweek.

80. The duties performed by Plaintiffs and others similarly situated did not implicate any exemptions contained within the FLSA, MWHL, or the MWPCL.

81. Plaintiffs and others similarly situated had no discretion. This was made clear by Defendant's decision to reclassify its field personnel to hourly employees. Field technicians, field operators, field engineers and project engineers are included within this group.

82. Defendant knew this entire group regularly worked well over forty (40) hours per week. Plaintiffs and others similarly situated were required to track their time through use of

Defendant's software. They kept accurate records of their work hours. This includes the time they spent in the office and in the field.

83.    Plaintiffs and other field personnel should have received overtime payments for the work they performed in the office and in the field. Defendant's classification of Plaintiffs and other field personnel as salaried prevented them from receiving proper overtime payments.

84.    Classifying its field personnel as salaried employees was just a ruse to save Defendant money. Defendant was able to save significant sums by denying its employees overtime.

85.    Defendant, acting without good faith, withheld these overtime wages. Despite its decision to convert its field personnel to hourly employees, Defendant failed to retroactively compensate these employees for the overtime wages they earned during the period they were misclassified. Plaintiffs and other field personnel were denied these wages altogether. They didn't receive any compensation for the overtime wages they earned.

86.    Plaintiffs and other field personnel made consistent complaints in regard to their failure to receive these wages. Defendant chose to simply ignore Plaintiffs' and other similarly situated employees' complaints.

87.    Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

88.    Plaintiffs and other similarly situated employees work or worked for Defendant as field technicians, field operators, field engineers and project engineers (collectively referred to as "field personnel") for Defendant. They were all employed to inspect and monitor pipelines and physical infrastructures.

89.     Defendant employs field personnel at all of its offices throughout the United States. Defendant maintains offices in Atlanta, Georgia, Branchburg, New Jersey, Columbia, Maryland, Dallas, Texas, Miami, Florida, San Diego, California, Buffalo Grove, Illinois, Houston, Texas, St. Louis, Missouri and Austin, Texas.

90.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and other field personnel with overtime wages for all hours worked over forty (40) within a workweek.

91.     Defendant knew that Plaintiffs and other similarly situated employees did not qualify for any exemption to the FLSA's overtime provision.

92.     Defendant knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

93.     Defendant suffered and/or permitted Plaintiffs and other similarly situated employees to work more than forty (40) hours per week.

94.     Defendant knew that Plaintiffs and other similarly situated employees were entitled to overtime pay for all hours worked over forty (40) in a workweek.

95.     Regardless of the number of hours they worked each week, Defendant failed to compensate Plaintiffs and other similarly situated employees with additional pay when they worked in excess of forty (40) hours.

96.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

97.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek

within the applicable statute of limitations.  Plaintiffs make these same demands on behalf of all members of the putative class.

98.    Plaintiffs consent to be party Plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibits A-C.

99.    It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

100.    There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

101.    These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

102.    Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

103.    Upon information and belief, other similarly situated employees will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

### CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

104.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that served as field technicians, field operators, field engineers, or project engineers (collectively referred to as "field personnel") for Defendant and were subject to the following practices and policies:

105.    Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek; and

106.     Denial of all wages owed to Plaintiffs and other similarly situated employees who were not paid all wages due to them at the termination of their employment, in violation of the MWPCL.

107.     The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

All individuals who are or were employed by Defendant as field technicians, field operators, field engineers, project engineers and in other similar nonexempt, salaried positions for any period ranging from three (3) years prior to the filing of the instant Complaint to the present, who were paid on a salary basis, and who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek, in violation of MWHL.

*MWPCL Class*

All individuals who were, but are no longer, employed by Defendant as field technicians, field operators, field engineers, project engineers and in similar positions for any period ranging from three (3) years prior to the filing of the instant Complaint to the present, who were paid on a salary basis and who were not paid overtime wages in accordance with MWHL and thus did not receive all wages owed to them before the termination of their employment, in violation of the MWPCL.

108.     *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, on information and belief, the class includes dozens of employees who are readily identifiable through Defendant's pay records.  Defendant employed dozens of field personnel across the state of Maryland. Field personnel are also employed out of Defendant's offices in Atlanta, Georgia, Branchburg, New Jersey, Columbia, Maryland, Dallas, Texas, Miami, Florida, San Diego, California, Buffalo Grove, Illinois, Houston, Texas, St. Louis, Missouri and Austin, Texas.  Consequently, numerosity exists.

109.     *Commonality:* There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiffs and the classes are:

i.      Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

ii.      Whether Defendant employed the MWHL Class within the meaning of MWHL;

iii.      Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

iv.      Whether Defendant's violations of MWHL were willful;

v.      Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

vi.      Whether Defendant failed to provide Plaintiffs and other members of the MWPCL Class with all wages due at the time their employment ended;

vii.      Whether Defendant's violations of MWPCL were willful; and

viii.      Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

110.    *Typicality:* Plaintiffs' claims are typical of those of the classes.  Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as field operators, field technicians, field engineers, project engineers and similar positions for Defendant.  Each and every MWHL Class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule.  Each class member was paid a salary that remained unchanged, regardless of whether they worked over forty (40) hours per week.  Every member of

the MWHL Class failed to receive overtime wages and every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. As a result, each and every class member suffered the same harm.

111. *Adequacy:* Plaintiffs willfully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of law and the same damage theory. Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

112. *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts. This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment, as required by the MWPCL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid as well as the amount of time each class member worked.

113. This action is maintainable as a class action. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

114. Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Pure Technologies, Inc.*

**Count I.** *Violation of the FLSA: failure to pay overtime wages to Plaintiffs and all members of the Collective Class who, during the course of this matter, opt-in to the suit by submitting their consent forms to become party Plaintiffs*

115.   Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

116.   Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

117.   As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

118.   Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

119.   There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

120.   All members of the putative class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

121.   Under the FLSA, Plaintiffs and all members of the class are entitled to additional wages from Defendant to compensate them for hours worked in excess of forty (40) in a week at a rate of one and one-half (1.5) times their regular hourly wage rate.

**Count II.** *Violation of MWHL: failure to pay overtime wages to Plaintiffs and all members of the MWHL Class, to be certified by motion during the course of this matter*

122.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

123.    Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times their regular hourly rate.

124.    Pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

125.    Plaintiffs have not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

126.    Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

127.    There is no bona fide dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

128.    All members of the MWHL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

129.    Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times their regular hourly wage rate.

**Count III.** *Violation of the MWPCL: failure to pay Plaintiffs and all members of the MWPCL Class all wages owed at the termination of their employment*

130.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

131.    Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq.*, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

132.    In accordance with §3-505(a), Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment. This is specific to Defendant's failure to pay Plaintiffs the overtime wages that they are entitled to.  Defendant failed to pay members of the MWPCL Class correctly by committing the same harm.

133.    Defendant willfully and intentionally did not compensate Plaintiffs and members of the class with all wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

134.    All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

135.    Under the MWPCL, there is no bona fide dispute that Plaintiffs and the MWPCL Class are owed wages for the work they performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiffs and all members of the proposed classes;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e) Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWHL Class and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWPCL Class and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiffs and members of the classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the classes and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other similarly situated employees' respective regular hourly rate for all overtime hours worked;

k) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the classes and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

l) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

25

m) Leave to add additional Plaintiffs by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

n) All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

_____/s/_____

Joseph E. Spicer, Esquire #27839
jspicer@nicholllaw.com
Benjamin L. Davis, III, Esquire #29774
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Telephone No.: (410) 244-7005
Fax No.: (410) 244-8454
Attorneys for Plaintiffs