**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

**CODY SIMPSON, *et al.***

Plaintiffs,

**v.**

**PURE TECHNOLOGIES U.S., INC.**

Defendant.

Civil Action No.: 1:17-cv-02532-PX

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION TO FACILITATE IDENTIFICATION AND NOTICE TO SIMILARLY-SITUATED EMPLOYEES**

Plaintiffs Cody Simpson, Nicholas Redding and Brian Miles (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel and the Law Offices of Peter T. Nicholl, hereby file this Memorandum in Support of Plaintiffs' Motion for Conditional Certification to Facilitate Identification and Notice to Similarly Situated Employees. In support thereof, Plaintiffs state as follows:

## I. PROCEDURAL BACKGROUND

On September 1, 2017, Plaintiffs filed their Complaint against Pure Technologies U.S., Inc. (hereinafter, "Defendant"). [ECF Doc. No. 1]. Plaintiffs have brought the above-captioned matter on behalf of themselves and similarly situated employees. *Id.* Plaintiffs and members of the putative class seek the recovery of wages pursuant to the standards set forth in the Fair Labor Standards Act (hereinafter, "FLSA"). *Id.*

## II. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs are merely seeking this Court's assistance in identifying and notifying prospective class members. Plaintiffs "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan

that violated the law.'" *Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)(emphasis added) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). In other words, "plaintiff[s] need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995); *see also Severtson v. Phillips Bev. Co.*, 141 F.R.D. at 278 ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated.")

Moreover, "[b]ecause there is minimal evidence at this stage, the 'determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.'" *Robinson v. Empire Equity Group, Inc., 2009 WL 4018560,* at *2 (D. Md. Nov. 18, 2009), (quoting *Yeibyo v. E-Park of DC, Inc.*, 2008 WL 182502, at * 7 (D. Md. Jan. 18, 2008)). The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA." *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)). Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiffs herein. *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Plaintiffs' declarations identify the pay practices implemented by Defendant to avoid paying its employees their wages owed. Defendant is an engineering company that specializes in infrastructure inspection and monitoring. Defendant's business primarily involves the inspection of water, oil and natural gas pipelines. Defendant employs field technicians, field operators, field

engineers and project engineers (collectively referred to as "field personnel") to conduct inspections of these pipelines.

Plaintiff Miles and Plaintiff Simpson were full-time field technicians. *See Declaration of Cody Simpson*, ¶ 3, attached as Exhibit No. 1 (hereinafter, "*Simpson Decl*."); *see also Declaration of Brian Miles*, ¶ 3, attached as Exhibit No. 2. (hereinafter, "*Miles Decl*."). Plaintiff Redding was employed by Defendant as a project engineer. *See Declaration of Nicholas Redding,* ¶ 3, attached as Exhibit No. 3. (hereinafter, "*Redding Decl*.")

The duties and responsibilities of all of Defendant's field personnel were substantially similar. Plaintiffs and others similarly situated were responsible for the same primary tasks. Their duties involved traveling to job sites to perform inspections and reporting their findings to management. *Simpson Decl.*, ¶ 6; *Miles Decl.*, ¶ 6; *Redding Decl.*, ¶ 6. Plaintiffs were charged with inspecting pipelines and other infrastructure in order to assess whether there was any damage. *Id.* This was accomplished through the use of various devices. *Id.* To perform their duties, Plaintiffs and other similarly situated employees were required to travel outside the State of Maryland and to other countries. *Id.*

Plaintiffs' and other similarly situated employees' tasks centered on manual labor and routine technical work. *Id.* at ¶ 7. Field personnel were required to follow Defendant's guidelines. *Id.* at ¶ 8. There were protocols established related to all of their on-site tests. *Id*. There were also guidelines associated with reporting their results. *Id*. Plaintiffs and other field personnel were required to follow these guidelines. *Id*. Plaintiffs and others similarly situated simply needed a basic understanding of field testing procedures in order to perform their work. *Id.* at ¶ 7.

Field personnel routinely worked over forty (40) hours each week. *Id.* at ¶ 11. Their field work often took substantial time to complete. *Id.* at ¶ 12. Defendant required Plaintiffs and others

similarly situated to work as many hours as needed to complete their assignments. *Id.* at ¶ 12. However, Plaintiffs and other field personnel were not paid for all their hours of work. *Id.* at ¶ 13.

Defendant failed to properly compensate its field personnel. *Id*. Plaintiffs and others similarly situated were not paid overtime wages when they worked in excess of forty (40) hours per week. *Id.* Defendant's failure to pay overtime wages to Plaintiffs and others similarly situated violated the standards set forth by the FLSA. As such, prompt notification to potential class members is critical. Unlike a Rule 23 class action, the statute of limitations is not automatically tolled for these current and former employees by the filing of the Complaint. *See* 29 C.F.R. § 790.21(b). In collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the action until they file their written consent to "opt-in" to the case. *See* 29 U.S.C. §216(b). Thus, Plaintiffs request that the asserted FLSA claims be recognized as a collective action so that notice may be promptly issued to similarly situated employees.

As set forth in Plaintiffs' pleadings and attached declarations, field personnel who worked for Defendant from September 1, 2014 through the present have not been properly compensated. They were not paid their full wages for all their hours of work. *Simpson Decl.*, ¶ 13; *Miles Decl.*, ¶ 13; *Redding Decl.*, ¶ 13 Defendant made all decisions regarding how its field personnel were paid. *Id.* at ¶ 4. Defendant established a common policy that resulted in its field personnel to not be fully compensated for working overtime. *Id.* at ¶¶ 11-15. Plaintiffs believe that there are approximately fifty (50) or more current and former employees that have been subjected to Defendant's unlawful pay practices. *Id.* at ¶ 16.

Defendant's unlawful pay practices conflict with the FLSA. Plaintiffs request this Court's assistance in notifying and identifying other field personnel that have been subjected to these practices.

## III. LEGAL STANDARD

Pursuant to 29 U.S.C. § 216, the FLSA permits plaintiffs to "maintain a collective action against their employer for violations under the act." *See Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp. 2d 762, 771 (D. Md. 2008). The Courts employ a two-step process in performing an analysis for FLSA certification. The first stage is known as the "notice stage." At the "notice stage," the court "makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members is appropriate." *Butler v. DirectSAT USA, LLC*, 876 F.Supp. 2d 560, 566 (D. Md. 2012). The second stage is known as the "decertification stage." *Rawls v. Augustine Home Health Care*, *Inc*. 244 F.R.D. 298, 300 (D. Md. 2007). The "decertification stage" typically occurs once the discovery period has closed, at which time the court performs a more stringent analysis of the merits of the case to determine whether the plaintiffs are similarly situated for purposes of proceeding as a collective action. *Id.* The two-step analysis was summarized by the United States District Court for the Southern District of New York:

> Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Certainly the [p]laintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in the litigation process, after more thorough discovery.

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (the first stage of the two-step procedure "requires a lax showing of 'similarly situated'").

The courts have found that FLSA certification is appropriate at the "notice stage" when plaintiffs make "a minimal evidentiary showing that they can meet the substantive requirements of 29 U.S.C. § 216(b), that is, that they are similarly situated." *See Camper v. Home Quality Mgt., Inc*., 200 F.R.D. 516, 519-20 (D. Md. 2000); *see also Rawls*, 244 F.R.D. at 300. Accordingly, § 216(b) of the FLSA provides that a claim must proceed as a collective action when "the plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Camper,* 200 F.R.D. at 519-20; *see also Gambo v. Lucent Tech.,* 2005 WL 3542485 (N.D. Ill. Dec. 22, 2005).

The federal courts have examined the extent to which one or more named plaintiffs must be "similarly situated" to the proposed group of unnamed plaintiffs in order for all to proceed before the court together as a collective action. Significantly, it has been determined that "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are 'similarly situated.'" *Levinson v. Primedia, Inc.*, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003). Moreover, how employers classify their employees or the fact that employees may work in multiple locations is irrelevant to whether they are similarly situated for purposes of a collective action. *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001); *see also Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997). In *Shain v. Armour & Co*., 40 F. Supp. 488 (W.D.Ky.1941), which involved a claim for unpaid overtime wages, the court analyzed the "similarly situated" standard and concluded as follows:

> Employees may be similarly situated without being identically situated. The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other.

*Id*. at 490.

This Court has stated, "[p]laintiffs are similarly situated when they raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from . . . similar . . . job requirements and pay provisions." *Robinson v. Empire Equity Group, Inc*., 2009 WL 4018560 (D. Md. Nov. 18, 2009), quoting *Yeibyo v. E-Park of DC, Inc.*, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008)(internal quotations and citations omitted). This Court has made clear that "[t]he class members' positions 'need not be identical, only similar.'" *Id., quoting Yeibyo,* 2008 WL 182502, at * 7.

Courts routinely grant collective action status in FLSA cases far more complex and far-reaching than the instant matter. *See Shaffer v. Farm Fresh, Inc.*, 759 966 F.2d 142, 147 (4th Cir. 1992); *see also Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 251 (S.D.N.Y. 1997). Moreover, the merits of the asserted FLSA claims are not even at issue at this stage of the proceedings. *See Severtson v. Phillips Bev. Co.*, 141 F.R.D. 276, 280 (D. Minn. 1992). This Court, in *Carlos Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762 (D. Md. 2008), explained the standard for FLSA collective action cases:

> The first issue in determining whether plaintiffs have demonstrated that potential class members are "similarly situated." 29 U.S.C. §216(b). Courts in this District have held that plaintiffs should be required "to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists" before court assistance is granted. *Camper*, 200 F.R.D. at 519 (quoting *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 893-94 (D. Md. 1995)). This would include factual evidence by affidavits or other means, but mere allegations in the complaint would not suffice. *Camper*, 200 F.R.D. at 519; accord *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991) (reasoning that "as a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists … [p]laintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist").
>
> A group of potential plaintiffs are "similarly situated" when they

> together were victims of a common policy or scheme or plan that violated the law. *See D'Anna, 903 F. Supp. at 894*; *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431-32 (S.D.N.Y. 1995). However, "employees cannot be expected to have evidence of a stated policy of refusing to pay overtime." *Marroquin v. Canales*, 236 F.R.D. 257, 260-61 (D. Md. 2006).

*Id.* (footnotes omitted). Furthermore, "factual disputes do not negate the appropriateness of court-facilitated notice." *Id.*

## IV. LEGAL ARGUMENT

This Court has held that "[p]laintiffs are similarly situated when they raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from . . . similar . . . job requirements and pay provisions." *Robinson, 2009 WL 4018560* (quoting *Yeibyo*, 2008 WL 182502, at * 7) (internal quotations and citations omitted). This Court has also stated that "[t]he class members' positions 'need not be identical, only similar.'" *Id.* (quoting *Yeibyo*, 2008 WL 182502, at * 7). The relevant facts in the instant matter make clear that Plaintiffs and members of the putative class are similar for purposes of this Court granting conditional certification at the notice stage.

### A. The nature of work performed by Plaintiffs and the putative class makes clear they are similarly situated

Plaintiffs and others similarly situated were employed by Defendant as field technicians, field operators, field engineers and project engineers ("field personnel"). *See Simpson Decl.*, ¶ 3; *Miles Decl.*, ¶ 3; *Redding Decl.*, ¶ 3. Their responsibilities included traveling to various jobsites and performing inspections of pipelines and other infrastructure to assess whether there was damage. *Id.* at ¶¶ 5-9. Plaintiffs and others similarly situated were required to follow Defendant's guidelines when performing their inspections. *Id.* at ¶ 8. Once they obtained the test results, they reported the results to management. *Id.* at ¶ 6. Field personnel simply needed a basic understanding of field testing procedures to perform their work. *Id.* at ¶ 7.

Defendant controlled and supervised the work performed by its field personnel. *Id.* at ¶ 5. Defendant also had the authority to change the course of their duties. *Id*. At all times relevant, Plaintiffs and those similarly situated recognized Defendant's authority and followed Defendant's instructions. *Id*.

B. <u>The hours worked by Plaintiffs and other similarly situated employees were similar</u>

The hours worked by Plaintiffs and members of the putative class illustrate the appropriateness of conditional certification. Defendant supervised the administration of its business and set the work schedules of Plaintiffs and others similarly situated. *Simpson Decl.*, ¶¶ 5, 10; *Miles Decl.*, ¶¶ 5, 10; *Redding Decl.*, ¶¶ 5, 10. Defendant possessed and exercised the authority to determine the number of hours worked by Plaintiffs other field personnel. *Id*. The inspections performed by Plaintiffs and other field personnel would often take a long time to complete. This resulted in Plaintiffs and other similarly situated employees having to work in excess of forty (40) hours per week. *Id.* at ¶¶ 11-14. They worked overtime for the duration of their employment. *Id.* at ¶¶ 13, 14. It was common for Plaintiffs and other field personnel to work as many as fifty (50) or more hours each week. *Id.* at ¶ 11; *see also Collective and Class Complaint for Wages Owed* (hereinafter, "*Compl.*") at ¶ 73 [ECF Doc. No. 1].

Defendant's agents were well aware of the overtime hours worked by Plaintiffs and those similarly situated. *Id.* at ¶ 14. Said agents were regularly present on-site during the time when Plaintiffs and others similarly situated were performing their tasks. *Id*.

C. <u>Plaintiffs and others similarly situated were subject to the same pay provisions</u>

Plaintiffs and members of the putative class were subject to the same pay policies. Defendant made all decisions regarding Plaintiffs' and other similarly situated employees' rates and method of pay. *Simpson Decl.*, at ¶ 4; *Miles Decl.*, at ¶ 4; *Redding Decl.*, at ¶ 4. Defendant paid Plaintiffs and other field personnel a salary. *Id.* This was regardless of the fact that Plaintiffs

and other field personnel performed non-exempt work. Defendant failed to fully compensate Plaintiffs and other field personnel for working over forty (40) hours per week. *Id.* at ¶ 13. It was Defendant's company-wide policy to not pay its field personnel overtime wages. This was despite the fact that Plaintiffs and other similarly situated employees worked overtime frequently. *Id.* at ¶ 11. Defendant's company policy resulted in its field personnel to be consistently denied overtime wages. *Id.* at ¶¶ 12-15. The pay provisions instituted by Defendant resulted in Plaintiffs and others similarly situated to not be fully compensated for all hours worked. *Id.* at ¶¶ 4, 15.

D. <u>The scope of the collective action is easily defined</u>

Plaintiffs are pursuing this action on behalf of themselves and all other similarly situated employees. Plaintiffs have personal knowledge that other similarly situated employees performed substantially similar work duties and did not receive their full compensation pursuant to the standards set forth by the FLSA. *Simpson Decl.*, ¶ 13*; Miles Decl.*, ¶ 13*; Redding Decl.*, ¶ 13. Plaintiffs also have personal knowledge that information relating to these employees is in Defendant's possession, custody and control. *Id.*

Plaintiffs believe there are approximately fifty (50) or more current and former field personnel members that encompass the putative class. *Id.* at ¶ 16. Defendant currently has nine (9) offices in the United States. Defendant maintains offices in Atlanta, Georgia; Dallas, Texas; Austin, Texas; Houston, Texas; St. Louis, Missouri; Branchburg, New Jersey; Columbia, Maryland; Miami, Florida; and San Diego, California. The scope of the collective action must include any and all full-time field technicians, field operators, field engineers and project engineers that were paid a salary between September 1, 2014 through the present. *Id.* at ¶¶ 3, 4, 13. Plaintiffs are requesting the Court's assistance in identifying and notifying these field personnel members. Plaintiffs have established that they and other members were victims of Defendant's unlawful

practices. *Id.* at ¶¶ 4, 11-15. Plaintiffs have produced more than sufficient evidence to establish that there are others similarly situated.

It is well-settled that "[d]istrict courts have the discretionary power to authorize the sending of notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70 (1989)); *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001). Indeed, "it is 'unlikely that Congress, having created a procedure for representative action [under the FLSA], would have wanted to prevent the class representatives from notifying other members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) (citation omitted).

The rationale for this court-facilitated notification procedure was best explained by the United States Supreme Court in *Hoffmann-LaRoche, supra*:

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongful] activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties.

*Id.* 170.

Within seven (7) days of the Court's Order authorizing collective action status, Plaintiffs propose that the parties be directed to confer with each other to determine if they can agree to the terms of the notice and opt-in form. If the parties cannot agree to the terms, then each should be required to submit their proposals for the Court's determination. *See Belt v. Emcare Inc.*, 299 F. Supp.2d 664 (E.D. Tx. 2003).

Within ten (10) days of the Court authorizing collective action status, Plaintiffs also respectfully request this Honorable Court enter an Order compelling Defendant to produce to Plaintiffs' counsel a list of the full name, last known residential address, last known work address, last known phone number(s) and last known e-mail address of every individual who worked as a field technician, field operator, field engineer and project engineer from September 2014 through the present.

## V. CONCLUSION

It is clear that Plaintiffs have met their burden. Accordingly, the instant matter must proceed as a collective action. Others similarly situated should have the opportunity to vindicate their rights.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*

Benjamin L. Davis III (29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.: (410) 244-8454